UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASSILIOS "BILL" SKOTANIS,

      Plaintiff,

v.                                   Case No:  8:24-cv-02331-JLB-CPT

NORDSTROM, INC., a Foreign Profit
Corporation, d/b/a
NORDSTROM RACK,

      Defendant.

_____/

## **ORDER**

Plaintiff Vassilios "Bill" Skotanis ("Mr. Skotanis") sues Defendant

Nordstrom, Inc. ("Nordstrom") for negligence under Florida law after he tripped and

fell over a rolling clothes rack while shopping at a Nordstrom Rack store in

Clearwater, Florida, on February 21, 2023. (Doc. 1). Before the Court is

Nordstrom's Motion for Summary Judgment (Doc. 13). Mr. Skotanis filed a

response (Doc. 14), and Nordstrom replied (Doc. 21). After a careful review of the

parties' briefings and the record, the Court concludes that Defendant's Motion for

Summary Judgment is due to be **GRANTED**.

## BACKGROUND

On February 21, 2023, Mr. Skotanis and his wife visited a Nordstrom Rack store located in Clearwater, Florida.  (Doc. 13-1 at 43:5–10, 55:22–23).  After browsing the store for a few minutes, Mr. Skotanis approached the area where he would ultimately trip.  (*See id.* at 47:24–48:2).  This area was monitored by a Nordstrom closed-circuit television ("CCTV") camera.  (Doc. 13-2).

To briefly describe the area, the rolling clothes rack that Mr. Skotanis tripped over had shirts hanging from it and sat near a ceramic walkway at the front of a display area.  (*Id.*).  To the rack's left was a shorter display table with shirts for sale.  (*Id.*).  A linear clothes rack sat perpendicular to and behind the rolling clothes rack.  (*Id.*).  Finally, further back in the display area, there were two circular racks with many shirts hanging from them.  (*Id.*).

As Mr. Skotanis entered the area from the ceramic walkway, he touched and inspected multiple shirts hanging from the rolling clothes rack for ten seconds. (Doc. 13-1 at 67:15–68:1; Doc. 13-2 at 7:37:16–25 p.m.; Doc. 14 at 4).  Stepping to his left, he then surveyed the display area before walking into it and out of the camera's view until 7:42 p.m.  (Doc. 13-1 at 68:2–11; Doc. 13-2 at 7:37:25–40 p.m., 7:42:25 p.m.).  As Mr. Skotanis walked between the rolling clothes rack and the linear clothes rack to enter the display area, his back brushed up against shirts hanging from the rolling clothes rack.  (Doc. 13-1 at 68:7–9; Doc. 13-2 at 7:37:37 p.m.).

While Mr. Skotanis was out of the camera's view, two Nordstrom employees continued to work in the area.  (Doc. 13-2 at 7:37:21–42:25 p.m.).  At 7:40 p.m., one

2

employee approached the rolling clothes rack and removed a few shirts, twice bumping the rack slightly to the left as she did so. (*Id.* at 7:40:12–22 p.m.). At 7:41 p.m., both employees rearranged the circular and linear racks, creating more space between the rolling clothes rack and the right-most circular rack. (*Id.* at 7:40:53–59 p.m., 7:41:39–59 p.m.). Then, at 7:42 p.m., the employees moved the rolling clothes rack to the left and removed several shirts from it, leaving two shirts remaining. (Doc. 13-1 at 68:14–16; Doc. 13-2 at 7:42:05–15 p.m.).

At that time, Mr. Skotanis returned to that area with his wife. (Doc. 13-1 at 76:1–17; Doc. 13-2 at 7:42:25 p.m.). He did not pay attention to the employees working in the area. (Doc. 13-1 at 71:6–8, 75:22–76:5). Instead, he walked around one of the circular rolling clothes racks and exited between it and the other circular rack. (Doc. 13-1 at 57:14–17; Doc. 13-2 at 7:42:25–30 p.m.). As he approached the rolling clothes rack, he briefly stopped in front of the linear clothes rack and turned sideways. (Doc. 13-1 at 59:13–60:2; Doc. 13-2 at 7:42:31–33 p.m.). He then continued to walk sideways towards the rolling clothes rack without turning his head. (Doc. 13-1 at 59:24–60:2; Doc. 13-2 at 7:42:33–35 p.m.) Mr. Skotanis did not see the rolling clothes rack. (Doc. 13-1 at 74:17–21). He then caught his left foot on its bottom bar. (Doc. 13-1 at 57:5–10, 59:24–60:2; *see* Doc. 13-2 at 7:42:34–37 p.m.). Both he and the rolling clothes rack fell to the floor, and others subsequently rushed to his aid. (Doc. 13-1 at 46:24–47:2; Doc. 13-2 at 7:42:34–47 p.m.).

Nordstrom now moves for summary judgment. (Doc. 13). It argues that the rolling clothes rack was an open and obvious danger, so it did not owe Mr. Skotanis

3

a duty to warn, and it did not fail to maintain its premises in a reasonably safe condition. (*Id.*). Nordstrom also contends that Mr. Skotanis was the sole proximate cause of his accident. (*Id.* at 19–23). Mr. Skotanis responded (Doc. 14), and Nordstrom replied (Doc. 21).

## LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted). An issue is "genuine" if a rational trier of fact, viewing all of the record evidence, could find in favor of the nonmoving party. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted).

In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268

(11th Cir. 2014) (citation and internal quotation marks omitted).  Both the Supreme

Court and the Eleventh Circuit have addressed video evidence in the context of this

summary judgment standard.

In *Scott v. Harris*, 550 U.S. 372, 378 (2007), the Supreme Court found error

in the lower court's reliance on the plaintiff's (there, the non-movant's) version of

events because the "videotape quite clearly contradict[ed] the version of the story

told by" the plaintiff.  After addressing what the videotape showed in that case, the

Supreme Court returned to the summary judgment standard and explained:

> At the summary judgment stage, facts must be viewed in the light
> most favorable to the nonmoving party only if there is a "genuine"
> dispute as to those facts.  As we have emphasized, "[w]hen the moving
> party has carried its burden under Rule 56(c), its opponent must do
> more than simply show that there is some metaphysical doubt as to the
> material facts....Where the record taken as a whole could not lead a
> rational trier of fact to find for the nonmoving party, there is no
> 'genuine issue for trial.'"  "[T]he mere existence of *some* alleged factual
> dispute between the parties will not defeat an otherwise properly
> supported motion for summary judgment; the requirement is that
> there be no *genuine* issue of *material* fact."  When opposing parties tell
> two different stories, one of which is blatantly contradicted by the
> record, so that no reasonable jury could believe it, a court should not
> adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.
>
> That was the case here with regard to the factual issue whether
> respondent was driving in such fashion as to endanger human life.
> Respondent's version of events is so utterly discredited by the record
> that no reasonable jury could have believed him.  The Court of Appeals
> should not have relied on such visible fiction; it should have viewed the
> facts in the light depicted by the videotape.

*Id.* at 380–81 (citations omitted).

Following *Scott*, the Eleventh Circuit has explained that it views the facts in

light of video evidence "to the extent it squarely conflicts with [the non-movant's]

testimonial descriptions." *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022). Indeed, the Eleventh Circuit has "repeatedly applied [a] preferencing rule in affirming summary judgment based on objective evidence notwithstanding the presence of some contradictory testimony from the nonmovant elsewhere in the record." *Id.* at 1258 n.12 (citations omitted). That said, "where the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in the light most favorable to [the nonmoving party]." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021) (citation omitted).

## DISCUSSION

To prevail on a negligence claim under Florida law, a plaintiff must prove four elements: the existence of a duty, a breach of that duty, causation, and damages. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).[1] Florida law imposes two "separate and distinct" duties on business owners in premises-liability cases. *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131 (Fla. 1st DCA 2017) (quoting *Rocamonde v. Marshalls of Ma, Inc.*, 56 So. 3d 863, 865 (Fla. 3d DCA 2011)). First, a business must "warn [invitees] of concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care." *Id.* Second, the business must "use ordinary care to maintain its premises in a reasonably safe condition." *Id.* Here, there is no genuine issue of material fact that the rolling

---

[1] Florida's substantive law applies to this diversity case. *See, e.g.*, *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010).

clothes rack was an open and obvious danger.  Therefore, Nordstrom had no duty to warn Mr. Skotanis of its presence, and it did not fail to maintain its premises in a reasonably safe condition.  Thus, summary judgment in Nordstrom's favor is appropriate.

I.   **Nordstrom Had No Duty to Warn Mr. Skotanis of the Rolling Clothes Rack Because the Danger Was Open and Obvious.**

A business has no duty to warn an invitee of an "open and obvious condition which is not inherently dangerous." *Ramsey v. Home Depot U.S.A., Inc.*, 124 So. 3d 415, 417 (Fla. 1st DCA 2013) (citation omitted).  This is because "the proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." *Earley v. Morrison Cafeteria Co. of Orlando*, 61 So. 2d 477, 478 (Fla. 1952) (citation omitted).  "If the obviousness of the condition would lead a *reasonable person* to believe that the danger will be avoided, the condition is not unreasonably dangerous, and the landowner is not liable." *Brookie*, 213 So. 3d at 1136 (quoting *Arnoul v. Busch Ent. Corp.*, No. 8:07-cv-1490, 2008 WL 4525106, at *3 (M.D. Fla. Oct. 6, 2008)) (emphasis modified).

*Brookie* offers a helpful example of an obvious condition.  *See id.* at 1132. There, a plaintiff tripped over an empty pallet in the parking lot outside a store's front door.  *Id.* at 1130.  Florida's First District Court of Appeal affirmed summary judgment, reasoning that the pallet was obvious because the plaintiff had seen and avoided the pallet multiple times before tripping.  *Id.* at 1131–32, 1137.  As the court explained, the law protects a business from suit "when any *reasonably attentive* invitee who saw an open and obvious condition . . . would act in his or her

7

own interest in personal safety, and by the use of ordinary common sense, avoid the observed transitory item." *Id.* at 1137 (citation omitted) (emphasis modified). Thus, the store had no duty to warn the plaintiff of the pallet because it was open and obvious. *Id.* Notably, Florida courts have recognized that mobile clothing racks may be open and obvious as a matter of law. *See Rocamonde*, 56 So. 3d at 865 (denying summary judgment because, while "the cart itself was open and obvious," plaintiff tripped over the protruding bottom portion of a z-shaped rack).

A condition can be open and obvious as a matter of law, even if the plaintiff does not actually see it before tripping. *See Jacques v. Wal-Mart Stores E., L.P.*, No. 18-60072-CIV, 2019 WL 7370964, at *3 (S.D. Fla. Oct. 17, 2019); *Joseph v. Wal-Mart Stores E., LP*, No. 6:21-cv-1331, 2022 WL 18926794, at *4 (M.D. Fla. Dec. 14, 2022); *Rogers v. Dollar Tree Stores Inc.*, No. 6:20-cv-424, 2021 WL 3025669, at *2–3 (M.D. Fla. July 14, 2021). In *Jacques*, the court granted summary judgment, holding that an empty pallet sitting in a freezer aisle was an open and obvious condition, even where the plaintiff was distracted by looking at the store's merchandise. 2019 WL 7370964, at *3. Because plaintiff's view of the pallet was unobstructed and the lighting was adequate, the court held that she should have detected the pallet. *Id.* The fact that the plaintiff found the pallet "unexpected" did not discharge her of her duty to "perceive that which would be obvious to [her] upon the ordinary use of [her] own senses." *Id.* (quoting *Earley*, 61 So. 2d at 478).

By contrast, in *Moultrie v. Consolidated Stores Intern. Corp.*, 764 So. 2d 637, 639–40 (Fla. 1st DCA 2000), a Florida court held that a six-inch-high pallet in a

8

store aisle was not an open and obvious condition because "[t]he height of the pallet was such that it might not fall within the line of vision of adult invitees who entered the Big Lots Store to purchase items placed on counters and shelves."

Here, the rolling clothes rack that Mr. Skotanis tripped over was an open and obvious condition as a matter of law for several reasons. First, unlike the six-inch-high pallet in *Moultrie*, the rolling clothes rack here was quite tall. (*See* Doc. 13-2). As Nordstrom's CCTV demonstrates, the rack's chrome bar, from which clothes hung, was taller than any of the surrounding racks. (*Id.*). Next, as Mr. Skotanis noted, the rolling clothes rack was not empty at the time he tripped over it. (Doc. 13-1 at 56:18–22). At least two shirts remained on the rack, and the CCTV video shows they were visible from the direction Mr. Skotanis approached prior to his fall. (*Id.*; Doc. 13-2 at 7:42:29 p.m.).

The end of the rolling clothes rack was also visible from Mr. Skotanis's perspective. (*See* Doc. 13-2 at 7:42:29 p.m.). As the CCTV video demonstrates, even if part of the rack was hidden behind the linear clothes rack, the rolling clothes rack extended beyond the camera's view after employees moved it to the left. (*Id.*). Therefore, Mr. Skotanis had ample opportunity to see both the chrome top bar of the rack and the bottom section that he ultimately tripped over.

Finally, as in *Brookie*, Mr. Skotanis's own actions demonstrate that the rolling clothes rack was an open and obvious condition because he previously saw and interacted with the clothes rack for ten seconds when he first approached the area, and he was able to pass behind the rack without incident as he left the

9

camera's view for the first time. *Compare Brookie*, 213 So. 3d 1131–32 *with* (Doc. 13-1 at 67:15–68:1, 68:7–9). Although shirts were later removed from the rack and Mr. Skotanis could not recall interacting with the rack at his deposition, (Doc. 13-1 at 63:21–64:25), these actions captured on the CCTV video highlight that Mr. Skotanis was able to recognize the existence of the rolling clothes rack at the time and act accordingly. (*See* Doc. 13-2). Thus, the Court follows *Rocamonde* and holds that the rolling clothes rack in this case was an open and obvious condition because it was visible from multiple directions and Mr. Skotanis had previously interacted with it. *See Rocamonde*, 56 So. 3d at 865.

While Mr. Skotanis is similar to the plaintiff in *Moultrie* because he was distracted by looking at the store's merchandise, he is more similar to the *Jacques* plaintiff because he could have reasonably seen the rolling clothes rack, as it was of a similar height to the clothes that he was looking at in the area. *Compare Moultrie*, 764 So. 2d at 639–40 *with Jacques*, 2019 WL 7370964, at *3 *and* (Doc. 13-2 at 7:42:30 p.m.).

Mr. Skotanis argues that *Brookie* is not instructive because he interacted with the rolling clothes rack only twice before his accident and because its appearance changed during the time he was away from the area. (Doc. 14 at 13–14). However, even in that light, the rolling clothes rack was open and obvious for the reasons previously stated because a reasonably attentive invitee would have been aware of a tall clothes rack similar to the height of clothing racks in that area. *See Brookie*, 213 So. 3d at 1137 (citations omitted). And, as demonstrated by

10

*Jacques, Joseph*, and *Rogers*, a plaintiff's failure to see an object does not preclude the object from being considered open and obvious as a matter of law. *See Jacques*, 2019 WL 7370964, at *3; *Joseph*, 2022 WL 18926794, at *4; *Rogers*, 2021 WL 3025669, at *2–3. The inquiry is whether a reasonably attentive person would have seen the object. *See Earley*, 61 So. 2d at 478.

Thus, no genuine issue of material fact exists as to whether the rolling clothes rack was an open and obvious condition as a matter of law, and Nordstrom had no duty to warn Mr. Skotanis of its presence.

## II. Nordstrom's Store Was Reasonably Safe Under the Circumstances.

Nordstrom also satisfied its duty to "maintain its premises in a reasonably safe condition." *See Rocamonde*, 56 So. 3d at 865 (citation omitted).

Under Florida law, while the duty to warn and the duty to maintain a premises in a reasonably safe condition are separate and distinct, "for analytical purposes the duties are not mutually exclusive, as the open and obvious nature of a condition may preclude a finding of a breach of either duty, as a matter of law." *Brookie*, 213 So. 3d at 1133. "[S]ome conditions are so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition." *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012) (citing *Schoen v. Gilbert*, 436 So. 2d 75, 76 (Fla. 1983)). "Other conditions are dangerous, but are so open and obvious that an invitee may be reasonably expected to discover them and to protect himself." *Id.* (citing *Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309, 1311 (Fla. 1986)).

11

Whether a condition causes a premises to cease being reasonably safe also depends on the context of the premises. For example, the *Brookie* court explained that "[b]usiness owners receive shipments of products every day, which must be stored somewhere before final placement, and if a customer sees the placement of the products but trips and falls over them, the customer, or invitee, has violated his own duty to exercise reasonable care for his own safety." *Brookie*, 213 So. 3d at 1134–35. Similarly, the court in *Rogers*, 2021 WL 3025669, at *4 (citation omitted), held that the presence of a crate in a shopping aisle did not create a dangerous condition because it was so commonplace as a "legitimate aspect" of the defendant's business that it did not create a dangerous condition. "Common sense dictates that Defendant must frequently restock its shelves and that its invitees . . . *expect* to find crates on the floor of Defendant's aisles for this purpose." *Id.* (emphasis original).

So too, here, Nordstrom did not breach its duty to maintain its premises in a reasonably safe condition because the rolling clothes rack was an open and obvious condition that would be commonplace to find in Defendant's stores as part of its business. The presence of a rolling clothes rack in a clothing store is a condition that is "so commonplace, so innately harmless, and so conspicuous that it cannot, as a matter of law, support Plaintiff's negligence cause of action." *See Rogers*, 2021 WL 3025669, at *4 (citing *Brookie*, 213 So. 3d at 1132–37). "There is no premises safe enough to entirely foreclose the risk that a guest might injure himself during an inattentive moment." *Arnoul*, 2008 WL 4525106, at *3. Even if the Court were to assume that the rolling clothes rack was a dangerous condition, the record

12

evidence of the rolling clothes rack's size and placement still presents no genuine issue of material fact.  Therefore, summary judgment is appropriate.

Mr. Skotanis argues that Nordstrom's premises were not reasonably safe because the Nordstrom employees closed the opening that he walked through on his first pass through the area.  (Doc. 14 at 16).  However, the CCTV video shows that Mr. Skotanis did not attempt to return through the same opening he passed through on his first visit.  (*Compare* Doc. 13-2 at 7:37:35–37 p.m. *with* Doc. 13-2 at 7:42:31–36 p.m.).  Instead, the angle that he took would have resulted in a collision with the rolling clothes rack at both 7:37 p.m. and 7:42 p.m.  (*Id.*).  Where video evidence "squarely conflicts with [the non-movant's] testimonial descriptions," the court should rely on the video evidence.  *Baxter*, 54 F.4th at 1257.  Moreover, even if the opening did completely close, the open and obvious nature of the rolling clothes rack would make summary judgment proper because a "proprietor has a right to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses."  *Earley*, 61 So. 2d at 478.

For the same reason, Mr. Skotanis's argument that *Muurahainen v. TJX Companies, Inc.*, 397 So. 3d 205, 207–08 (Fla. 5th DCA 2024), requires a denial of summary judgment also fails because Nordstrom's CCTV footage provides the information relevant to determining whether to grant judgment as a matter of law. (Doc. 14 at 15–17).

In sum, Nordstrom had no duty to warn Mr. Skotanis of the rolling clothes rack because it was an open and obvious condition, and Mr. Skotanis has presented

13

no genuine issue of material fact that the location of the rolling clothes rack caused Nordstrom's premises to cease to be reasonably safe.

## CONCLUSION

For the reasons set forth above, Defendant Nordstrom, Inc.'s Motion for Summary Judgment (Doc. 13) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate all pending deadlines, and close the case.

**ORDERED** in Tampa, Florida, on February 3, 2026.

_____

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE